13991

McKORRELL v. MUTUAL LIFE INS. CO OF NEW YORK

(178 S. E., 346)

*Messrs. Samuel Want* and *Melvin Hyman,* for appellant,

*Messrs. Thomas, Lumpkin & Cain* and *Dargan & Paulling,* for respondent,

February 4, 1935.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action to recover total and permanent disability benefits as originally provided for by two policies of life insurance, in the sum of $5,000.00 each, issued to Robert B. McKorrell by the defendant company on May 16, 1921. The plaintiff alleged that prior to January, 1932, he became totally and permanently disabled; that, when the May, 1932, premiums accrued, he was not then aware that he was entitled to any disability benefits, and was not so advised by the defendant, but was induced by the company's agents, when he became financially unable to pay his premiums, to permit his policies to be indorsed with a provision that they would be carried as extended insurance without disability benefits. He also alleged that thereafter, when he became

apprised of his rights, he made demand upon the company for the payment of the benefits claimed by him, but that it refused to pay any part thereof, on the ground "that its investigation did not sustain the plaintiff's claim that prior to May 16th, 1932, he was and still is permanently and totally incapacitated." The defendant admitted the issuance of the insurance, but alleged that the total and permanent disability benefits provided for had terminated prior to the institution of this action by reason of the lapse of the policies before any claim was filed or asserted.

On trial of the case in the Court of Common Pleas for Darlington County, the presiding Judge granted the defendant's motion for a nonsuit, and from his order this appeal is taken.

Only two questions are presented for consideration:

(1) Did the company waive its defense of the failure of the insured to make proof of his disability prior to the lapse of the policies?

(2) Was not such failure on the part of the insured excused by the company's failure to advise him of his rights in the premises? These we will consider in the order named.

Each of the policies sued upon provided that, in consideration of the payment by the insured to the company of an additional annual premium of $11.45, which was included in the annual premium paid upon the issuance of the policy and in the annual premiums to be thereafter paid, the insured would be given additional protection in the way of benefits in the event of total and permanent disability. The following pertinent language we here quote: "If the insured, after payment of premiums for at least one full year, shall, before attaining the age of sixty years and provided all past due premiums have been duly paid and this policy is in full force and effect, furnished due proof to the company at its home office either (a) that he has become totally and permanently disabled by bodily injury or disease, so that he is, and will be, permanently, con-

tinuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation * * * the company, upon receipt and approval of such proof, will grant the following benefits." It was then provided that "the company will, during the continuance of such disability, waive payment of each premium as it becomes due, commencing with the first premium due after approval of said due proof," and will "pay to the insured a monthly income at the rate of ten dollars for each one thousand dollars of the face amount of this policy." The annual premium was made to fall due on May 16th of each year, and a grace period of 30 days was allowed for its payment.

It is conceded that the May 16, 1932, premium was not paid on its due date or within the grace period, and that, consequently, the policies lapsed. The plaintiff testified that, when he found that he could not pay the 1932 premium, he carried the policies to Columbia, which was before the grace period had run out, and took them to the office of the defendant and asked for Mr. Hendley, the general agent of the company in South Carolina, but that he did not get to see him at that time; that he did talk, however, with one of the company's representatives in the office, to whom he stated that "on account of my physical condition I had to hire more men and could not keep up the policies"; that the agent replied "there is nothing we can do except to get you extended insurance"; that he left the policies at the office, and the company thereafter made an indorsement thereon giving him extended insurance for a certain length of time and then returned them to him, but that he never read the indorsement and did not know its contents; that, subsequently through the action of a friend, his attention was called to the fact that the policies originally contained disability provisions, and he then wrote the general agent and later saw him in person about the matter; that this agent told the witness he was sorry he could not do anything for him, as he

(the insured) had slept on his rights, but "I will send the claim in for you and see if they approve it"; that "some months after that an agent of the company visited my house to look into this to see, I guess, if I was entitled to this disability"; and that the witness gave him permission to examine his hospital record, but nothing was said about the policies being in default or that the insured was entitled to recover for disability. A letter written by the defendant's manager to McKorrell on January 21, 1933, was introduced in evidence, in which it was stated that it was the opinion of the company that the insured was not totally and permanently disabled within the meaning of the disability clause in the policies.

The appellant contends that, under this state of facts, the company clearly waived its right to rely as a defense upon the insured's failure to furnish proof of disability at any time, and that the policies must stand or fall upon the single issue whether, at the time of the investigation made by the respondent, and prior thereto, the appellant was, and still is, totally and permanently disabled.

We have given careful and painstaking consideration to this question, and are constrained to hold that appellant's contention is without merit. When the insured went to the Columbia office for the purpose of advising the insurer of his inability to pay the premiums then due, and accepted term insurance in lieu of that which he was then carrying, he thereby abrogated the old contract, which provided for disability benefits, and entered into a new one, which did not. It is conceded that the insured was not induced to make this new agreement with the company through any fraudulent or deceitful action on its part, and, as he is a business man of broad experience, intelligence, and good judgment, he should not be heard to complain that he was ignorant of his rights in the premises; and, while it appears that the company did thereafter make some inquiry as to his claim, later filed, that he was totally and permanently disabled,

there was then no existing right of the insurer in relation to disability benefits that it did or could have waived. This is a case, as stated by the Circuit Judge, where a good man lost his insurance through inexcusable negligence on his part.

To sustain his second contention, that his failure to present to the company proofs of his disability prior to the lapse of his policies was excused by the insurer's failure to advise him of his rights in the premises, the appellant relies entirely upon what occurred at the office of the company in Columbia, when he was there to see the general agent in June, 1932. His testimony with respect thereto is as follows:

"Q. You went to Mr. Hendley's office in Columbia and asked for Mr. Hendley, and found he wasn't in, and were informed that he would not be back until later. Now, do you know the name of the party to whom you were talking? A. I do not. He introduced himself, but I don't recall his name. He was a tall man and looked something like that gentleman there handing those papers. I don't say he is the one, but he looked something like him.

"Q. Did you tell him what you wanted, A. Yes.

"Q. Did he talk to you about the matter? A. Yes.

"Q. Did he look for the records of your policies? A. No, I handed him the two policies there; I had them with me.

"Q. What was it that you told him about the policies? A. I told him that I was sorry that I could not carry the policies any longer, but on account of my physical condition I had to hire more men and could not keep up the policies; and he said, 'I can't do a thing about this,' and I said, 'want to see Mr. Hendley, that he was a good friend of mine,'—but I found out later that he was not the Mr. Hendley that I was thinking about, and he said, 'There is nothing we can do except to get you extended insurance on this policy.'

"Q. When was that? A. That was about June or July, 1932, just before my thirty days (grace) ran out.

"Q. Did you discuss with this gentleman the matter of total and permanent disability benefits? A. There was nothing like that mentioned."

We find nothing in this testimony which tends to show that the company contributed to the insured's alleged ignorance of the contents of the policies or that it did anything to prevent his gaining full knowledge thereabout. And, too, there is no contention, as we have stated, that he was deceived or defrauded by the defendant in the matter. The statement as to his physical condition did not necessarily indicate to the company's agent that the insured was totally and permanently disabled within the meaning of the policies. It is true he stated that his physical condition was not good; in fact, that because of it he had to hire more laborers to do his work, and therefore would be unable to keep up his policies. But the language used, as we say, while making it clear that he was unwell, did not conclusively show that he was totally disabled or that he was ignorant of the disability provisions of his policies. On the contrary, as he had been paying premiums for such protection for more than 10 years, and as the provisions were clearly set out in the policies, the company's representative might have properly concluded that he did know. We do not think, therefore, that the defendant, in the circumstances, omitted to say or do anything at the time which in law will now prevent it from asserting its rights. In other words, that by its conduct it has estopped itself to claim that the proofs of disability were not filed in due time.

The judgment of the lower Court is affirmed.

MESSRS. JUSTICES CARTER and BONHAM and MESSRS. ACTING ASSOCIATE JUSTICES J. HENRY JOHNSON and C. J. RAMAGE concur.